PER CURIAM.
Appellants, fifteen condominium associations representing the unit owners of a condominium real estate development, sued the appellee, developer, FPA, to establish a constructive trust to assert their claimed right to join two golf and tennis clubs in the development on an annual dues paying membership after the developer had converted them to equity membership clubs. Prom a final judgment in favor of developer, appellants filed this appeal. We affirm.
“THE WORLD OF PALM-AIRE” real estate development is a mixed use residential and recreational development consisting of approximately 1750 acres in Pompano Beach. It has within its boundaries condominiums, single family homes, apartments, golf courses, tennis courts, clubs, a hotel, a spa and commercial development. Each condominium was the subject of a declaration of condominium which provided for recreational facilities to be owned by the condominiums as common elements and for the lease of recreational facilities in common with other condominiums. However, the golf courses, tennis courts, clubs, and spa which are the subject matter of this suit were not included in the declarations of condominium or the recreational leases.
Between 1968 and the end of 1987 over 6,000 condominium units in the World of Palm-Aire were sold. Purchasers were told that the golf and tennis facilities were available on an annual dues or daily fee basis. However, no one testified that the developer represented that such facilities would be available to them permanently.
All condominium unit owners who purchased their units from FPA or Orleans Construction Company of Florida, Inc. (a subsidiary) signed contracts which provided in part:
ORAL REPRESENTATIONS CANNOT BE RELIED UPON AS CORRECTLY STATING THE REPRESENTATIONS OF THE DEVELOPER. FOR CORRECT REPRESENTATIONS, REFERENCE SHOULD BE MADE TO THIS CONTRACT AND THE DOCUMENTS REQUIRED BY SECTION 718.503, FLORIDA STATUTES, TO BE FURNISHED BY A DEVELOPER TO A BUYER OR LESSEE.
[[Image here]]
Purchaser hereby acknowledges and agrees that only those recreation and other type facilities and services (hereinafter referred to as “facilities and services”) as are provided for pursuant to the terms and provisions of the applicable Declaration of Condominium and Exhibits thereto will be provided. Any other facilities and services exist at the sole discretion of FPA Corporation, or its affiliates, and FPA Corporation and affiliates do not warrant or represent that such facilities and services which are established now or may be established in the future will continue, but rather such facilities and services may be terminated, altered, or otherwise cancelled at the sole *279 discretion of FPA Corporation, its affiliates, successors or assigns ...
Until January, 1988, annual memberships for the use of the five golf courses, tennis courts and the clubhouse facilities were available to all residents of “The World of Palm-Aire”. In order to obtain membership the residents were required to make an application and agree to abide by the Rules and Regulations established from time to time by the Board of Governors of the Palm Aire Country Club. The Rules and Regulations provided:
Use of Club areas, amenities or facilities and the rights and obligations of any member or guest are subject to the terms and conditions as prescribed in the General Rules and Regulations at the time of membership approval and as amended, from time to time, by the Club’s Board of Governors.
Facilities are subject to change in usage, elimination or substitution as may be determined by the Club’s Board of Governors.
Effective January 1, 1988, access to two of the five golf courses, most of the tennis courts and one of the two clubhouses was changed and limited to owners who purchased equity memberships. Member/owners would also pay annual dues. FPA had made the change because the clubs were losing money, and the developer determined that equity membership was a way to preserve the facilities. The equity conversion plan placed limitations on the number of memberships for the golf, tennis and social categories. However, still available to condominium owners were annual memberships at the remaining facilities which were subsequently purchased by another corporation.
In their complaint for a permanent injunction, appellants alleged that all the advertising, sales brochures and offerings by FPA included representation of the right to use the golf, tennis and clubhouse facilities which induced the purchasers to buy their condominiums, and they relied on the representations that they would be able to use the facilities upon payment of an annual membership fee. Appellants alleged that the appellants therefore owned a “right to use”, a usufruct or an easement of use and requested that the court declare appellees constructive trustees of all the recreation facilities. Appellants asked the court to “thereby [hold] that the right to use” the facilities upon the payment of “annual dues” is a right which runs with condominium unit ownership in “The World of Palm-Aire.”
After a lengthy trial in which the court was presented with a great number of witnesses and boxloads of documents, the trial court rendered its final judgment, material portions of which we reproduce verbatim.
e) That the plaintiffs at the time of the purchase of the original condominium units received no legal title documents of record which would give plaintiffs the right to usé the amenities in question by the payment of an annual membership fee or any other recorded right to use said amenities.
f) At the time the membership of the Plaintiffs purchased their individual units they were allowed to purchase for an additional annual membership fee the right to use all the golf and tennis facilities in the compex [sic], including the two golf courses, tennis facilities, and clubhouse presently owned by the Defendant, OAKS GOLF AND RACQUET CLUB, and this arrangement was continued until December, 1987.
g) The Plaintiffs concede that the Defendants are the owners or prior owner of the amenities in question and could and did raise the annual membership fees from time to time and allow the general public to use the amenities for a fee. The Plaintiffs now contend that the Defendants cannot sell a limited number of equity memberships in the amenities thus depriving some unit owners of their alleged right to use the amenities by payment of annual membership fee.
h) The Plaintiffs petition this court to allow them by permanent injunction to impose a constructive trust granting them a right which will run with the title to every condominium unit in the Plaintiffs [sic] condominiums to acquire annu *280 al memberships in the amenities owned by the Defendant, OAKS GOLF AND RACQUET CLUB, INC. OF FLORIDA. The Plaintiffs characterize this right as an easement, usufruct, or right of use.
i) The basis for the Plaintiffs [sic] right of use is alleged to be certain representations allegedly inducing the purchase of the condominiums contained in advertisements, offering circulars, brochures, oral statements, and a past course of dealing.
j) Based on the evidence, the Court finds that the Plaintiffs have failed to prove as a result of the brochures, advertisements and alleged oral representations a constructive trust, or an easement, either express or implied, or a usufruct over the amenities owned by the Defendant, OAKS GOLF AND RACQUET CLUB, INC. OF FLORIDA, and used by the Plaintiffs in the past, which would require the Defendants to allow Plaintiffs to use said facilities for the payment of an annual membership fee.
Appellants assert that they were not asking the trial court to recognize an easement or restrict FPA’s use of their land. Appellants were seeking “to establish only in condominium unit owners, by injunction, the ‘right to join’ any recreational facility operated on the Defendant’s property appurtenant to the Plaintiffs’ condominiums for whatever annual dues the Defendant or any successor operator ... sought to charge from time to time for this membership.” Appellants assert the trial court ignored their theory of the case by ruling on appellees’ theory that appellants were asking for an easement, a position appellants had abandoned.
Appellants specifically rely on Scott v. Sandestin Corp., 491 So.2d 334 (Fla. 1st DCA 1986) and Flamingo Ranch Estates, Inc. v. Sunshine Ranches Homeowners, Inc., 303 So.2d 665 (Fla. 4th DCA 1974) as standing for the proposition that where a right of use in condominium unit owners is established a developer may be prohibited from relying on an absolute reservation of rights contained in a recorded declaration to unreasonably alter the terms or conditions for the use of amenities or the general scheme or plan of development. In Scott, appellants were condominium unit owners in a Sandestin resort project prior to its purchase by appellee, Sandestin Corp. When it purchased the development, the appellees imposed a requirement that in order to use the common facilities membership in the Sandestin Owners’ Association would be required. When Sandestin requested that they join, appellants declined. Sandestin and SOA then brought an action to determine whether its requirement of membership in the master association was permissible. The declarations of condominium provided:
[e]ach unit owner and each owner’s family, visitors, guests and lessees, shall be permitted to use the developer’s recreational and other facilities on a membership basis on such terms and conditions as the developer may, in its absolute discretion, impose from time to time.
491 So.2d at 334. The appellate court held that “[a]lthough the declarations of condominium granted the developer absolute discretion to set the terms and conditions under which unit owners could utilize the appurtenant amenities, ... the terms and conditions must be fair and reasonable.” 491 So.2d at 335. The court then affirmed the trial court’s finding that master association membership is a reasonable condition on amenities use especially in light of the fact that master associations provide for necessary upkeep such as maintenance of roadways, lakes, landscaping, lighting, security, garbage service, pest control, insurance and taxes for the entire project.
In Flamingo Ranch Estates, Inc. v. Sunshine Ranches Homeowners, Inc., 303 So.2d 665 (Fla. 4th DCA 1974), appellant’s predecessor recorded certain Declaration of Restrictions which restricted uses in the development to insure “the development of the lands as a residential area of high standards.” Id. at 665. Sales were promoted and relied on this feature. One of the restrictions “reserved the developer the right to alter, amend, repeal or modify the restrictions at any time in its sole discretion.” Id. at 665-666. Appellant sought to amend the restrictions to allow for business use and appellee lot owners in the *281 development asked for a declaratory judgment determining that this purported amendment was void. The appellate court found there was an inconsistency between the elaborate set of restrictions which provided for a general plan of development and the grantor’s reservation of right to amend at its sole discretion. The appellate court held that this reservation in the Declaration of Restrictions, was valid so long as it was exercised in a reasonable manner so as not to destroy the general scheme or plan of development. Id. at 666.
Both Scott and Flamingo are distinguishable from this case. In Scott the declarations of condominium specifically provided that the residents “shall be permitted to use recreational facilities.” Thus, clearly the residents had a “right to use” them subject to terms and conditions set by the developer, to which the court attached a reasonableness test. Likewise, in Flamingo, there was a specific restriction recorded which restricted use to a residential area of high standards. This established a right in the lot owners to such a development. The subsequent attempt by the developer to amend the restrictions and allow business use under its reservation of rights clause was required to be reasonable in conjunction with the scheme or plan of that community.
In contrast, in the instant case, the trial court found that based on the evidence the appellants failed to prove as a result of the brochures, advertisements and alleged oral representations that they had a “right of use” with respect to the properties in the manner alleged in appellant’s complaint. This was a factual finding made by the trier of fact and supported by substantia] competent evidence. Without a factual finding that appellants had a “right to use” to which they were entitled, the appellants have not established the essential first element of a constructive trust. Steigman v. Danese, 502 So.2d 463 (Fla. 1st DCA 1987); Quinn v. Phipps, 93 Fla. 805, 113 So. 419 (Fla.1927). Contrary to appellant’s contention, we cannot find that the trial court ignored their theory of the case. The trial court simply found against their theory on the disputed factual issues.
We therefore affirm the judgment of the trial court.
GUNTHER, WARNER and GARRETT, JJ., concur.